IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BENO H.,[1]                                          Case No. 3:23-cv-01375-SB

                    Plaintiff,                       **OPINION AND ORDER**

            v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

**BECKERMAN, U.S. Magistrate Judge.**

        Beno H. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction over this appeal pursuant

to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in May 1990, making him 28 years old on June 27, 2018, his amended alleged disability onset date. (Tr. 16, 27.) Plaintiff is a high school graduate. (*Id.*) In his application for benefits, Plaintiff alleged disability due to the following conditions: severe

dyslexia, traumatic brain injury, dislocated left knee, sprained right knee, mild heart damage, hypertension, arthritis in ankles, chronic migraine, pain, gout, and blood clots. (*Id.* at 257.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 19, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 16.) On May 5, 2022, Plaintiff and his attorney appeared in person and testified at an administrative hearing, and a vocational expert ("VE") appeared and testified by telephone. (*Id.*) On June 17, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 16-28.) On July 21, 2023, the Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-4.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 19, 2018, Plaintiff's application date. (*Id.* at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "migraines, hypertension, obstructive sleep apnea, history of pulmonary embolism, obesity, and adjustment disorder with mixed anxiety and depression." (*Id.* at 18-19.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) except for the following:

> He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, and crawl. He can frequently balance, kneel, and crouch. He can tolerate occasional exposure to extreme cold, extreme heat, and pulmonary irritants or atmospheric conditions such as fumes, odors, dust, gases, and poor ventilation. He can tolerate moderate noise level intensity and indoor ambient lighting. He can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery.

(Tr. 22.) Additionally, at step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a janitor, laundry worker, cleaner housekeeper, mail sorter/routing clerk, and small products assembler II. (*Id.* at 28.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ constructed an erroneous RFC that failed to account for Plaintiff's migraines and the dizziness that he experiences as a side effect of his medications. (Pl.'s Br. at 5-20, ECF No. 9.) As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence. The Court therefore affirms the Commissioner's decision.

## I.    RFC FORMULATION

### A.    Applicable Law

The RFC is "the most [a claimant] can still do despite [his or her] limitations" and includes assessment of the claimant's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). An ALJ is required to assess a claimant's RFC based on all the record evidence, including medical sources, examinations, and information provided by the claimant. *Id.* at §§ 404.1545(a)(1)-(3), 416.945(a)(1)-(3). "In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); *Candy G. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-cv-0007-MC, 2023 WL 8433169, at *3-4 (D. Or. Dec. 5, 2023) ("The RFC must contemplate the 'total limiting effects' of all [medically determinable impairment]s, both 'severe' and 'non-severe'" (citing 20 C.F.R. §§ 404.1545(e), 416.945(e))). However, the ALJ need not include all possible limitations in the

assessment of what a claimant can do, but rather is only required to ensure that the RFC "contain[s] all the limitations that the ALJ found credible and supported by the substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) ("The ALJ . . . is 'free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.'" (quoting *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001))). If an ALJ applies the proper legal standard and the ALJ's decision is supported by substantial evidence, the court must affirm the ALJ's determination of a claimant's RFC. *See Bayliss*, 427 F.3d at 1217 ("We will affirm the ALJ's determination of [the plaintiff's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999))).

B.    **Analysis**

1.    **Limitations for Migraine Symptoms**

Plaintiff broadly contends that the RFC failed to address all of his alleged migraine symptoms and argues, specifically, that the ALJ erred in posing a hypothetical question to the VE that failed to account for "the amount of time [Plaintiff] is unable to work" due to migraines. (Pl.'s Br. at 7.)

The Ninth Circuit addressed a similar argument in *Britton v. Colvin*, 787 F.3d 1011, 1013-14 (9th Cir. 2015). In *Britton*, the plaintiff argued that the ALJ "erred by not including her migraine headaches in his examination of the [VE]." *Id.* at 1013. The Court acknowledged that that the ALJ did not expressly account for the plaintiff's migraines in the hypothetical he posed to the VE but noted that "[i]t is . . . proper for an [ALJ] to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Id.* (quoting *Osenbrock*,

240 F.3d at 1165). The court found that "[t]here was no independent medical evidence establishing that [the claimant] suffers from migraines three to four days a month, that she must rest when she gets them, and that they last for two to four hours, as she claimed." *Id.* at 1013-14. The court therefore concluded that "substantial evidence did not support including migraines in the examination of the vocational expert." *Id.* at 1013.

Here, the ALJ acknowledged that Plaintiff "reported having chronic migraine headaches since he was a child" and noted Plaintiff's testimony that he has "a constant headache, . . . about six migraines a month[,]" that "the only thing that helped manage his migraines was sleep[,] . . . [and] that he spent most of the day lying down." (Tr. 22-23.) Plaintiff argues that his "testimony . . . established a frequency and severity of migraines that demonstrated disability." (Pl.'s Br. at 8.) However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . [but rather] there must be medical signs and findings . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A). Furthermore, an ALJ must formulate an RFC based on limitations that are supported by substantial evidence, *see Bayliss*, 427 F.3d at 1217, and Plaintiff's subjective testimony, standing alone, does not constitute substantial evidence. *See Britton*, 787 F.3d at 1013-14. Like the claimant in *Britton*, Plaintiff relies exclusively on his own symptom testimony to establish the frequency and severity of his migraines and cites no objective medical evidence to corroborate his subjective reports. (*See* Pl.'s Br. at 6-11.)

In fact, the ALJ extensively discussed Plaintiff's medical records and found inconsistencies between Plaintiff's alleged migraine symptoms and his contemporaneous statements to providers. The ALJ cited records demonstrating that Plaintiff never reported to

medical providers that he stayed in bed most days due to his migraines (*see* Tr. 24, citing *id*. at 1125-1217), and the ALJ found that Plaintiff "was not observed to show signs of significant pain behavior in appointments" (*id*., citing *id*. at 342, 349, 362, 963, 972, 1024, 1129, 1147, 1162, 1170, and 1178). *See Greger*, 464 F.3d at 972 (finding that the "[claimant] failed to report any shortness of breath or chest pain" and never "participated in a planned . . . rehabilitation program" and holding that the ALJ therefore "provided clear and convincing reasons for rejecting [the claimant]'s testimony"). The ALJ also found that Plaintiff sought treatment for his allegedly chronic migraines in 2018 but failed to follow up with a specialist for more than ten months which, the ALJ found, "seems somewhat inconsistent with the extent of his alleged difficulty with headaches[,]" especially where the evidence demonstrated that Plaintiff sought medical treatment for other issues during the period in question. (Tr. 23.) The ALJ also found that "[t]here is not a persuasive explanation for the gaps in treatment for headaches." (*Id*.) *See* SSR 16-3P, available at 2016 WL 1119029 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). The Court finds no error in the ALJ's analysis.

The ALJ also contrasted Plaintiff's claims of constant migraines that prevent him from working with evidence that "[Plaintiff] was able to work full[-]time jobs in the past despite his headaches." (Tr. 22.) *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may

consider any work activity, including part-time work, in determining whether a claimant is disabled[.]"). The ALJ cited evidence that Plaintiff worked full time in 2011 and in 2017 and found that Plaintiff's previous jobs "suggest his headaches would not prevent him from working full[-]time." (Tr. 23.) Plaintiff argues that it was improper for the ALJ to cite Plaintiff's work history because it is unclear whether his past work "was performed with or without accommodations for his migraines." (Pl.'s Br. at 11.) Plaintiff cites no authority, and case law demonstrates that a claimant's work history is a proper basis for discounting his symptom testimony regardless of speculation regarding possible prior workplace accommodations. *See, e.g.*, *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (noting that "the record shows [the claimant] was gainfully employed during his twenties" despite alleging disabling conditions, and holding that "[the claimant]'s work history provides substantial evidence to support the ALJ's decision"); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988) (affirming the ALJ's decision that the claimant's "lengthy history of lower back problems did not render her disabled" where "substantial evidence indicated that . . . her back problems had not prevented her from working [in the past]"). The Court finds no error in the ALJ discounting Plaintiff's symptom testimony based on Plaintiff's work history.

Plaintiff argues that the ALJ erred in discounting Plaintiff's symptom testimony based on Plaintiff's "unremarkable" brain imaging, and the Court agrees. *See Cortez v. O'Malley*, No. 3:23-cv-00391-CLB, 2024 WL 982686, at *6 (D. Nev. Mar. 7, 2024) ("According to SSR 19-4p, physicians may conduct imaging scans such as MRI to 'rule out other possible causes of headaches - such as a tumor' . . . . Therefore, the presence of normal MRI is entirely consistent with the diagnosis of a migraine and using lack of MRI findings as objective evidence to discredit Plaintiff's symptom complaints was an error by the ALJ.") (citation omitted); *see also*

*Ha H. v. Kijakazi*, No. 20-cv-06866-KAW, 2022 WL 17968843, at *2 (N.D. Cal. Sept. 27, 2022)

("[T]he absence of MRI is insufficient because migraines are not inconsistent with normal MRI

findings. MRIs are used to rule out diseases of the brain or nerves that may cause headaches or

migraines, not as evidence that the headaches are nonexistent.") (simplified). However, the Court

finds that the error was harmless because the ALJ properly discounted Plaintiff's symptom

testimony based on his treatment records and work history, as discussed above. *See Jones v.

Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and

convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's

additional reasons for discounting [the claimant's] symptom testimony [were] harmless"); *Sims

v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the

claimant's testimony because the ALJ "provided at least one clear and convincing reason

supported by substantial evidence" for doing so).

Plaintiff emphasizes that the ALJ determined that Plaintiff's migraines constitute a

"severe impairment" at step two and argues that the RFC should have therefore included "the

entirety of work limitations caused by migraines." (Pl.'s Br. at 7.) Plaintiff's argument "conflates

the ALJ's analysis at steps two and three with the ALJ's RFC assessment at steps four and five,

which are separate and distinct." *Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-01539-MA,

2016 WL 4445467, at *3 (D. Or. Aug. 22, 2016) (citing 20 C.F.R. §§ 404.1520a(b)(1),

404.1546(c), 416.920a(b)(1), and 416.946(c)). Plaintiff's argument assumes, incorrectly, that an

ALJ's findings at step two determine the ALJ's RFC formulation at step five. *See Hoopai v.

Astrue*, 499 F.3d 1071, 1075-76 (9th Cir. 2007) ("The step two and step five determinations

require different levels of severity of limitations such that the satisfaction of the requirements at

step two does not automatically lead to the conclusion that the claimant has satisfied the

requirements at step five."); *see also Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) (rejecting the plaintiff's argument that "the ALJ's finding of a severe impairment at step two . . . necessarily requires inclusion of that impairment in the hypothetical question posed to the VE at step five" because "[a] step-two determination is not dispositive at step five"). The ALJ committed no error by finding Plaintiff's migraines a "severe impairment" at step two and formulating an RFC that did not include restrictions that address the full range of Plaintiff's alleged migraine symptoms.

### 2.    Limitations for Migraine Triggers

Plaintiff argues that the RFC was flawed because it failed to include adequate limitations to address the conditions that allegedly trigger his migraines: all indoor lighting, sunlight, and Clorox bleach. (Pl.'s Br. at 4-5, 11-13).

In *Candy G.*, the plaintiff similarly alleged that "her migraine symptoms include sensitivity to noise, light, and smell" and argued that the ALJ erred in formulating an RFC that did not include those limitations. 2023 WL 8433169, at *3-4. The court determined that "[t]he ALJ prepared an RFC considering all limitations for which there was support in the record, and that did not depend on [the p]laintiff's subjective symptoms, which were discounted." *Id.* (citing *Bayliss*, 427 F.3d at 1217). The court explained that "[t]he proper inquiry under SSR 19-4 is not whether the ALJ evaluated every alleged symptom, but whether the ALJ considered 'the extent to which the person's impairment-related symptoms are consistent with the evidence in the record.'" *Id.* at *4 (quoting SSR 19-4). Furthermore, "[i]n cases where migraine and migraine symptoms are alleged, '[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.'" *Id.*

///

Here, as in *Candy G.*, the ALJ did not err in formulating an RFC that did not include all of the limitations that Plaintiff seeks. The ALJ acknowledged Plaintiff's hearing testimony that his migraines are triggered by "light, sound, smells, and sunlight" (Tr. 22), and then explained that he "considered [Plaintiff]'s migraine headaches" in formulating the RFC and therefore "limit[ed] [Plaintiff] to no more than moderate level noise exposure and indoor ambient lighting." (*Id*. at 24.) The ALJ also reasonably discounted Plaintiff's symptom testimony based on his favorable response to medications that he took for his migraines (*id.* at 23-24), in addition to finding Plaintiff's testimony inconsistent with his work history and treatment records.[2] *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that the ALJ properly discounted the plaintiff's symptom testimony where substantial evidence showed that his medical condition had "decreased sufficiently to enable him to engage in gainful activity").

Plaintiff acknowledges that "the ALJ set forth restrictions to address Plaintiff's noise and light deficiencies" but argues that the limitations were inadequate. (Pl.'s Br. at 11-13.) Plaintiff argues that the RFC should have addressed his migraine triggers differently, but he does not challenge the multiple grounds on which the ALJ discounted his testimony regarding alleged triggers, *see supra*, and fails to demonstrate that substantial evidence supports his allegations. (*See* Pl.'s Br. 4-5, 11-13.) Thus, the ALJ did not err in formulating an RFC that did not include all of the limitations that Plaintiff seeks. *See Candy G.*, 2023 WL 8433169, at *4 (finding no error where "[t]he ALJ applied the proper legal standard when formulating the RFC" and where "[t]he ALJ then formulated the RFC in accordance with [his] findings and considering the record

---

[2] The ALJ also found that Plaintiff showed no "signs of sensitivity to light or noise" during his medical examinations. (Tr. 24.)

as a whole"); *see also Mickeal R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-3159-TOR, 2022 WL
4596643, at *6 (E.D. Wash. July 14, 2022) ("[B]ecause there is no objective medical evidence
that [the p]laintiff's [migraine] symptoms are caused by sensitivity to fluorescent lighting, and
[the p]laintiff's limitations are based solely on her own claims, the ALJ did not err in assessing
[the p]laintiff's RFC in this respect").

Even if the ALJ should have included a restriction in the RFC for Clorox bleach and even
if such a restriction would have eliminated the jobs of janitor, laundry worker, and cleaner
housekeeper as Plaintiff contends (*see* Pl.'s Br. at 11-13), any resulting error would be harmless
because the ALJ identified other jobs in the national economy that Plaintiff is capable of
performing: mail sorter and small products assembler II (Tr. 28). *See Padilla v. Saul*, 852 F.
App'x 277, 279 n.1 (9th Cir. 2021) ("To the extent the ALJ failed to reconcile the conflict
between the [RFC] . . . and the third identified job . . . any such error was harmless given that
[the claimant] could perform at least one of the jobs the VE identified" (citing *Zavalin v. Colvin*,
778 F.3d 842, 848 (9th Cir. 2015))); *see also Tonya W. v. Comm'r of Soc. Sec.*, No. 3:20-cv-
05742, 2021 WL 4086158, at *7 (W.D. Wash. July 6, 2021) ("Even if the ALJ erred in finding
that [the claimant] could perform the job of mailroom clerk, any error would be harmless, since
the VE testified that there were a range of other light and sedentary jobs [she] could perform[.]"),
*aff'd sub nom. White v. Kijakazi*, 2022 WL 6649616 (9th Cir. Oct. 11, 2022).

**C.    Limitation for Medication Side Effects**

Finally, Plaintiff argues that the ALJ erred in formulating an RFC of medium work
because it is "incompatible with [Plaintiff]'s established symptom of chronic dizziness." (Pl.'s
Br. at 13.) Plaintiff testified that he cannot work or stand for extended periods of time because of
the dizziness that he experiences from his hypertension medications. (Tr. 22, 47-48.)

The ALJ acknowledged that Plaintiff reported dizziness to his neurologist during two examinations in 2020, but found that "[Plaintiff] did not report dizziness to the naturopath he saw for primary care, which seems inconsistent with his allegations." (*Id*., citing *id*. at 960-1008 and 1107-124.) The ALJ added that, during Plaintiff's medical examinations, "he was not observed to have difficulty balancing when walking." (*Id*., citing *id*. at 349, 363, 697, 963, 1178, and 1204). The ALJ concluded that "the evidence does not support finding that . . . side effects from hypertension medication would prevent [Plaintiff] from working full[-]time at the medium exertion level[.]" (*Id*. at 24.) The ALJ, however, still "considered . . . possible medication side effects in restricting [Plaintiff]'s exposure to work hazards" and formulated an RFC that limited Plaintiff to "no exposure to hazards, including unprotected heights and moving mechanical machinery." (*Id*. at 22.) Plaintiff contends that those restrictions "are helpful" but fail to adequately mitigate the workplace dangers that Plaintiff's dizziness presented. (Pl.'s Br. at 15.)

Plaintiff argues that he did report dizziness to his naturopathic providers, contrary to the ALJ's finding. (*Id*. at 17.) Plaintiff cites two medical records that pre-date the relevant period and three records from the relevant period demonstrating that Plaintiff reported dizziness to some of his providers. (*See id*., citing Tr. 726, 743, 756, 1170, and 1178.) The ALJ, however, acknowledged Plaintiff's treatment notes from 2020 and his hearing testimony and, as Plaintiff put it, the ALJ "credited Plaintiff's testimony to the extent that his dizziness needed to be included in the RFC." (Pl.'s Br. at 14.) The ALJ also cited extensive medical records demonstrating that, with the exception of two reports to providers in 2020, Plaintiff did not report dizziness as a side effect of his hypertension medications during his examinations in 2019, 2020, and 2021, even while his providers reviewed his medications list and made changes. (*See* Tr. 960-1008, 1107-124.) The ALJ also reasonably found that Plaintiff's medical records fail to

indicate that Plaintiff had any apparent difficulty with walking or balance due to dizziness. (*See id*. at 349, 363, 697, 963, 1178, and 1204). Based on that evidence and the ALJ's analysis, the Court finds that the ALJ applied the proper legal standards and supported his decision with substantial evidence. *See Bayliss*, 427 F.3d at 1217 (finding that the ALJ committed no error in failing "to address the drowsiness side effect of [the plaintiff]'s medication" where, "[i]n making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the plaintiff]'s subjective complaints"); *see also Greger*, 464 F.3d at 973 ("Because [the plaintiff] did not report any fatigue to his doctors during the relevant period, the ALJ properly limited the hypothetical to the medical assumptions supported by substantial evidence in the record."). The ALJ, therefore, committed no error in formulating an RFC of medium exertion with a restriction of "no exposure to hazards such as unprotected heights and moving mechanical machinery." (Tr. 22.)

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and is supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 18th day of November, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge